# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 23-CR-80089-ROSENBERG/REINHART

**UNITED STATES OF AMERICA**

vs.

**RICARDO DIAZ-REYES,**

            **Defendant.**

_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Ricardo Diaz-Reyes (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty as to Count 1 of the Indictment, which charges the defendant with distribution of a controlled substance (cocaine), in violation of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C), and Count 4 of the Indictment, which charges the defendant with illegal re-entry into the United States after Removal, in violation of Title 8, United States Code, Section 1326(a). The defendant agrees that he is, in fact, guilty of the offenses.

2. This Office agrees to seek dismissal of Count 2 and 3 of the Indictment, as to this defendant, after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's

probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that as to Count 1 of the Indictment, the Court may impose a statutory maximum term of imprisonment of twenty (20) years, followed by a minimum term of supervised release of three (3) years up to life. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $1,000,000 and may order forfeiture and restitution. The defendant also understands and acknowledges that as to Count 4 of the Indictment, the Court may impose a statutory maximum term of imprisonment of up to two (2) years, followed by a term of supervised release of up to one (1) year. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 and may order forfeiture and restitution.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant for each Count. The defendant agrees that any special assessment

imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. Although not binding on the probation office or the Court, the parties will jointly request that the Court make the following findings with regard to the defendant's relevant conduct: the amount of narcotics for which the defendant is responsible is at least 40 KG but less than 60 KG of Converted Drug Weight.

7. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be

required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the offense alleged in Count 1 of the Indictment, and any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, pursuant to 21 U.S.C. § 853.

10. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

11. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the

defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

12. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

8/7/2023
DATE

By: _____
BRIAN D. RALSTON
ASSISTANT UNITED STATES ATTORNEY

8/7/2023
DATE

By: _____
ROBERT ADLER
COUNSEL FOR DEFENDANT

8/7/2023
DATE

By: _____
RICARDO DIAZ-REYES
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80089-ROSENBERG/REINHART

UNITED STATES OF AMERICA

vs.

RICARDO DIAZ-REYES,

Defendant.
_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and Ricardo Diaz-Reyes, (hereinafter "Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt as to Counts 1 and 4 of the Indictment charging the defendant with distribution of a controlled substance (cocaine) in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Illegal Re-entry into the United States after Removal, in violation of Title 8, United States Code, Section 1326(a).

### Elements

### Count 1: Distribution of a Controlled Substance

First:  That the defendant knowingly and intentionally distributed a controlled substance; and

Second: That the controlled substance was a mixture and substance containing a detectable amount of cocaine.

### Count 4: Illegal Re-entry into the United States after Removal

First:  The defendant was an alien at the time stated in the Indictment;

Second: The defendant has been removed from the United States;

Third:  Afterward, the Defendant knowingly reentered the United States; and

1

**Fourth**: The defendant did not have consent of the Attorney General of the United States or his successor, the Secretary of Homeland Security, to apply for readmission to the United States.

## Facts

1. In or about April 2023, law enforcement agents received information from a Drug Enforcement Administration ("DEA") and Palm Beach County Sheriff's Office ("PBSO") confidential source ("CS") that an individual he knew as "Chillango," later identified as the defendant, was involved in the distribution of cocaine.

2. On April 25, 2023, DEA agents arranged for a controlled purchase of cocaine between the CS, an undercover agent (UC), and the defendant. The CS placed a telephone call to the defendant to arrange for a purchase cocaine. During the communication, the defendant instructed the CS to meet at 650 Belvedere Road, West Palm Beach, Florida. Later that day, the CS and UC arrived at that location. The defendant arrived on his motorcycle, parked near the UC's vehicle and entered into the rear passenger side of the UC's vehicle. The defendant remained in the UC's vehicle for a short period of time before exiting and returning to his motorcycle.

3. A PBSO aerial unit followed the defendant as he left the parking lot of the meeting location. The defendant briefly stopped in the 2700 block of Lake Avenue, West Palm Beach, Florida, where agents observed the defendant remove a bag from underneath the seat area of the motorcycle. The defendant was then observed traveling back to the original meeting location. The defendant arrived at the parking lot where the UC and CS were parked. He parked his motorcycle and walked to the UC's vehicle where he entered the rear passenger seat. The defendant remained in the vehicle for several minutes and the UC exchanged $5,000 in return for the cocaine from the defendant. Immediately following the narcotics transaction, the defendant was observed by agents leaving the parking lot and travel directly back to the 1232 Cathy Lane, West Palm Beach. A Palm Beach

County Sheriff's Office Chemistry Report determined that the substance sold by the defendant contained cocaine with a net weight of 112.1989 grams.

4. On May 11, 2023, DEA agents arranged for a controlled purchase of four ounces of cocaine from the defendant. The UC contacted the defendant to arrange for the purchase of cocaine. During the communication, the defendant instructed the UC to meet at 650 Belvedere Road, West Palm Beach, Florida. The UC arrived at the location and entered the McDonald's. Agents followed the defendant from the 1232 Cathy Lane, West Palm Beach to 650 Belvedere Road, West Palm Beach, Florida. The defendant arrived at 650 Belvedere Road, West Palm Beach, in a vehicle with another individual. Upon arrival, the defendant contacted the UC and informed him that he arrived. The UC told the defendant that he was in the McDonald's and would come out to meet him. The defendant exited with vehicle with a plastic bag and began walking in the direction of the McDonald's. Uniformed agents approached the defendant at which time he threw the plastic bag. The defendant was thereafter arrested. Agents searched the plastic bag and found two baggies which contained suspected cocaine. A Palm Beach County Sheriff's Office Chemistry Report confirmed the substance in the baggies to be cocaine with a net weight of 112.9 grams.

5. A federal search warrant was executed at 1232 Cathy Lane, West Palm Beach, Florida. During the search, agents recovered approximately 4 grams of heroin, 14 grams of cocaine and approximately $20,205. Within the approximately $20,205, agents recovered $1,000 that matched the serial numbers of the U.S. currency used to purchase cocaine from the defendant on April 25, 2023.

6. Agents conducted record checks on the defendant with U.S. Immigration and Customs Enforcement. A review of the immigration records shows that the defendant is a native and citizen of Mexico. Records further show that on or about January 18, 2019, the defendant was ordered

removed. The Order of Removal was executed on or about January 22, 2019, whereby the defendant was removed from the United States and returned to Mexico.

6.  The defendant's fingerprints taken in connection with his arrest were scanned into the IAFIS system. Results confirmed that scanned fingerprints belong to the individual who was previously removed from the United States, that is the defendant.

7.  A record check was performed in the Computer Linked Application Informational Management System to determine if the defendant filed an application for permission to reapply for admission into the United States after deportation or removal. After a search was performed in that database system, no record was found to exist indicating that the defendant obtained consent from the Attorney General of the United States or from the Secretary of Homeland Security, for re-admission into the United States.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

8/7/2023
DATE

By: _____
BRIAN D. RALSTON
ASSISTANT UNITED STATES ATTORNEY

8/7/2023
DATE

By: _____
ROBERT ADLER
COUNSEL FOR DEFENDANT

8/7/2023
DATE

By: _____
RICARDO DIAZ-REYES
DEFENDANT

4